OPINION
{¶ 1} Appellant Jason Jordan appeals the verdict rendered in the Muskingum County Court of Common Pleas that found him guilty of possession of crack cocaine. The following facts give rise to this appeal.
 {¶ 2} On May 22, 2001, while observing traffic on Interstate 70, Trooper Warner, of the Ohio State Highway Patrol, noticed a vehicle traveling fifty-five miles per hour, which is ten miles per hour under the posted speed limit. The vehicle appeared to have been involved in an accident and had a lot of smoke coming out from underneath it. Trooper Warner also noticed the driver of the vehicle was not wearing a seatbelt and did not make an effort to put it on after Trooper Warner began following him.
 {¶ 3} As Trooper Warner passed the vehicle, on the left side, he further noticed the vehicle did not have a front license plate displayed. Based upon the license plate violation, Trooper Warner decided to stop the vehicle. Upon approaching the vehicle, Trooper Warner learned that appellant was a passenger, in the vehicle, being driven by Mr. Mitchell. Neither appellant nor Mr. Mitchell were able to produce a registration or proof of insurance for the vehicle and both gave inconsistent statements regarding the registered owner of the vehicle.
 {¶ 4} Trooper Warner decided to detain the vehicle until he could verify whether the owner of the vehicle authorized Mr. Mitchell to use it. Trooper Warner frisked Mr. Mitchell and placed him in the back of his patrol cruiser. Appellant remained in the vehicle. While talking to Mr. Mitchell, Trooper Warner learned that Mitchell had been in jail for trafficking in drugs. Upon learning this information, Trooper Warner requested a K-9 unit be dispatched to the scene.
 {¶ 5} Trooper Ball arrived on the scene, with his K-9 partner, Ringo, and conducted a search of the vehicle. Ringo alerted to the driver's door. Trooper Warner removed appellant from the vehicle, conducted a pat-down search of appellant's person and had appellant sit on the interstate guardrail between Trooper Warner's and Trooper Ball's cruisers. Trooper Ball conducted the search of the vehicle. During the search, Trooper Warner broke visual surveillance of appellant. The search of the vehicle produced a small amount of marijuana.
 {¶ 6} While Trooper Ball conducted the search of the vehicle, a passing motorist, Roger Wallace, observed appellant throw something over the guardrail. Mr. Wallace used his cellular phone to call the Ohio State Highway Patrol and inform them of what he had just observed. Shortly thereafter, Trooper Reimer arrived on the scene. Trooper Reimer informed Trooper Warner about Mr. Roger's phone call. Trooper Reimer searched behind the guardrail, where appellant had been seated, and found a plastic baggie containing a white, hard substance later determined to be 13.489 grams of crack cocaine.
 {¶ 7} On May 30, 2001, the Muskingum County Grand Jury indicted appellant for one count of possession of crack cocaine and one count of possession of marijuana. This matter proceeded to trial on March 18, 2003. Following deliberations, the jury returned a verdict finding appellant guilty of possession of crack cocaine and not guilty of possession of marijuana. On May 5, 2003, the trial court sentenced appellant to seven years in prison.
 {¶ 8} Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 9} "I. Defendant was denied the effective assistance of counsel and due process of law in violation of his rights under the fifth, sixth and fourteenth amendments of the united states constitution, and under article I §§ 10 and 16 of the ohio constitution.
 {¶ 10} "II. Mr. Jordan was denied due process of law and a fair trial, in violation of his rights under the fifth andfourteenth amendments of the united states constitution, and under article I, § 16 of the ohio constitution, by repeated acts of prosecutorial misconduct in closing argument.
 {¶ 11} "III. The trial court erred when it failed to state on the record at sentencing its reasons for imposing a sentence in excess of the minimum sentence available, under ohio revised code § 2929.14(D)."
 I {¶ 12} In his First Assignment of Error, appellant claims he was denied effective assistance of counsel. We disagree.
 {¶ 13} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668;State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 14} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable professional assistance. Id.
 {¶ 15} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. State v. Carter
(1995), 72 Ohio St.3d 545, 558, citing Lockhart v. Fretwell
(1993), 506 U.S. 364, 370.
 {¶ 16} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quoting Strickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 17} In support of this assignment of error, appellant refers to seven incidents that occurred, during the trial, which appellant claims establishes he was denied effective assistance of counsel. Appellant first refers to Trooper Warner's testimony wherein Trooper Warner discussed indicators of criminal activity, his observations of the situation based upon drug interdiction training and Mr. Mitchell's prior criminal record for selling drugs. Appellant also argues defense counsel improperly permitted Trooper Warner to introduce hearsay statements from Trooper Reimer and Trooper Ball. Finally, appellant challenges defense counsel's failure to object to Trooper Warner's testimony regarding an inhaler he found on Mr. Mitchell and that he was suspicious of Mr. Mitchell's and appellant's statements that they were leaving Columbus to go shopping in Zanesville. We will address each of these arguments separately.
 "A. Indicators of Criminal Activity and Drug Interdiction Training" {¶ 18} Appellant's first argument addresses Trooper Warner's testimony concerning indicators of criminal activity and his observations based upon drug interdiction training. This testimony, from Trooper Warner, is as follows:
 {¶ 19} "He volunteered that he had just gotten out of the state pen in '99 for trafficking, either coke or crack cocaine, I'm not sure which, so I had had training also in drug interdiction school with the state patrol, so we look for certain indicators of drug trafficking, and so I was seeing several of those indicators here, driving the slow speed, owner wasn't present with the vehicle, driver or anyone in the vehicle — no one knew who owned the car.
 {¶ 20} "All of these are indicators of drug activity. Also, past criminal record for drug activity was also a large indicator, so I called for a K-9 unit to come and walk around the car. And I believe the post checked with the sheriff's office, checked with Cambridge, our headquarters. There weren't any K-9 units there; however, Trooper Ball, he was supposed to start his shift, I believe, at 8:00 that night, and he lived relatively close. He was in Licking County. He lived relatively close to where it was, so they were able to get in touch with him as he was leaving his home and dispatched him to the scene." Tr. Vol. I at 39-40.
 {¶ 21} Appellant maintains Trooper Warner should not have been permitted to testify about indicators of criminal activity and his opinion of the events based upon his drug interdiction training. Evid.R. 701 addresses opinion testimony by lay witnesses and provides as follows:
 {¶ 22} "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."
 {¶ 23} In Lee v. Baldwin (1987), 35 Ohio App.3d 47, 49, the First District Court of Appeals explained that lay testimony must be, "(1) `rationally based on the perception of the witness,'i.e., the witness must have firsthand knowledge of the subject of his testimony and the opinion must be one that a rational person would form on the basis of the observed facts; and (2) `helpful,' i.e., it must aid the trier of fact in understanding the testimony of the witness or in determining a fact in issue."
 {¶ 24} We find Trooper Warner's testimony admissible under Evid.R. 701. First, Trooper Warner's testimony was based upon training he received concerning the types of activities that indicate drug activity. These indicators, to a person trained in law enforcement, suggest drug activity. Further, Trooper Warner's testimony concerning these indicators was helpful to explain to the jury why Trooper Warner continued to detain and investigate appellant and Mr. Mitchell. Therefore, we conclude Trooper Warner's testimony regarding indicators of criminal activity was properly admitted under Evid.R. 701 and appellant was not prejudiced by defense counsel's failure to object to this testimony.
 "B. Mr. Mitchell's Prior Criminal Record" {¶ 25} Appellant's second argument concerns Trooper Warner's testimony regarding Mr. Mitchell's prior criminal history. Trooper Warner testified that Mr. Mitchell informed him that he had been released from prison, in 1999, after serving a sentence for trafficking in either cocaine or crack cocaine. See Tr. Vol. I at 39. Appellant claims defense counsel should have objected to this testimony because it was prejudicial.
 {¶ 26} Evid.R. 403(A) addresses the exclusion of relevant evidence. This rule provides:
 {¶ 27} "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 28} Evid.R. 401 defines "relevant evidence" as "* * * evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
 {¶ 29} We conclude Trooper Warner's comment about Mr. Mitchell's prior criminal history was relevant and its probative value outweighed any danger of unfair prejudice. Mr. Mitchell's criminal record explained Trooper Warner's decision to continue to detain appellant and Mr. Mitchell in order to further investigate. Trooper Warner made this statement in order to explain why he believed it was necessary to detain appellant and Mr. Mitchell and why he decided to call for a K-9 unit. Further, the prior criminal record testimony related solely to Mr. Mitchell's record.
 {¶ 30} Thus, we conclude Trooper Warner's testimony, regarding Mr. Mitchell's prior criminal record, was properly admitted under Evid.R. 401 and 403 and appellant was not prejudiced by defense counsel's failure to object to this testimony.
 "C. Hearsay Statements Concerning Trooper Reimer" {¶ 31} Appellant's third argument challenges the admission of Trooper Warner's testimony regarding what Trooper Reimer told him about a dispatch he received. The testimony concerning Trooper Reimer's statements to Trooper Warner is as follows:
 {¶ 32} "Trooper Reimer told me that he was told by the post that someone had driven by and saw two officers up near the vehicle, possibly searching it, and someone, a black male leaning against the guardrail, saw him throw something from his waistband about three or four feet behind the guardrail when one of the officers turned their head." Tr. Vol. I at 48-49.
 {¶ 33} The record indicates that defense counsel objected to this statement. Id. at 48. Although the court initially sustained the objection, it decided to permit Trooper Warner to testify about Trooper Reimer's statement in order to show what was done during the investigation but not to prove the truth of the matter asserted. Id.
 {¶ 34} "It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed." State v. Thomas (1980), 61 Ohio St.2d 223, 232. The testimony of Trooper Warner concerning Trooper Reimer's statements to him was offered to explain Trooper Reimer's reason for being present, at the scene, and Trooper Reimer's subsequent search of the area around the guardrail. Further, both Trooper Reimer and Roger Wallace testified to the same facts. The testimony was properly admitted for the purpose of explaining what occurred during the investigation.
 {¶ 35} Therefore, Trooper Warner's testimony concerning Trooper Reimer's statements to him was properly admitted.
 "D. Hearsay Statements Concerning Trooper Ball" {¶ 36} In his fourth argument, appellant maintains defense counsel was ineffective for failing to challenge Trooper Warner's testimony regarding statements Trooper Ball made to him. The pertinent testimony is as follows:
 {¶ 37} "Well, then Trooper Ball went up and he searched the vehicle. I kind of stayed back with the defendant and talked with him a little bit. Then after about a minute or two, Trooper Ball motions for me to come up to the vehicle, so I started walking up and I take my eyes off of the defendant as I'm walking up to the car. I'm looking at him.
 {¶ 38} "I get to the Tracker, and I'm looking at the passenger's side. Trooper Ball is still on the driver's side because he said, "Are you still watching him?" I go, "Oh, yeah," and I turned and started watching him. He goes "Keep and eye on him." Trooper Ball said, "Did you search him real good?" I said, "Just patted him down for weapons."
 {¶ 39} "And Trooper Ball showed me that he found two separate bags, each containing real small Ziplock bags inside the — or underneath the driver's seat, which, again those are huge indicators of drug trafficking, too. When you add everything on top of all the indicators we're getting, it's really starting to look like there's something else going on here." Tr. Vol. I at 44-45.
 {¶ 40} As in the above argument, concerning hearsay statements from Trooper Reimer, we also conclude Trooper Warner properly testified regarding Trooper Ball's statements as such statements were admissible to explain Trooper Warner's actions. Thus, defense counsel was not ineffective for failing to object to this portion of Trooper Warner's testimony.
 "E. Inhaler Found on Mr. Mitchell" {¶ 41} Appellant next challenges Trooper Warner's statement regarding the inhaler found on Mr. Mitchell. Trooper Warner testified as follows concerning the inhaler:
 {¶ 42} "At this time, I find an inhaler in Kevin Mitchell's pocket with a female's name on it and he admitted to me that was his mother's name. She had used her insurance to get the inhaler for him, so we had him get back in the car, and we knew that prescription fraud was also possibly a felony and a very serious offense, so I talked with the K-9 handler about that." Tr. Vol. I at 46-47.
 {¶ 43} We agree that this portion of Trooper Warner's testimony was not relevant to the charges against appellant. However, we do not find the testimony prejudiced appellant and any error that did occur was harmless error pursuant to Crim.R. 52(A). Therefore, defense counsel was not ineffective for failing to object to this testimony.
 "F. Shopping In Zanesville" {¶ 44} Appellant's next argument pertains to Trooper Warner's testimony about appellant's reason for traveling to Zanesville. Trooper Warner testified as follows:
 {¶ 45} "They told us earlier they were just driving to Zanesville to go to Gabe's and that's another indicator they're making a trip. They're leaving Columbus, with all the shopping, to come to Zanesville to shop, which didn't make sense." Tr. Vol. I at 45.
 {¶ 46} Trooper Warner offered this testimony to explain his decision to continue to investigate for a possible crime. This factor, along with several other factors, resulted in Trooper Warner's decision to continue his investigation and call for a K-9 unit. We find such evidence relevant.
 {¶ 47} Accordingly, defense counsel was not ineffective for failing to object to this portion of Trooper Warner's testimony.
 {¶ 48} Having reviewed the various portions of Trooper Warner's testimony that appellant cites in support of his claim that he was denied effective assistance of counsel, we find appellant was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.
 {¶ 49} The final argument, under appellant's First Assignment of Error, concerns the fact that defense counsel was suspended from the practice of law, by the Ohio Supreme Court, on March 19, 2003, the same day he presented appellant's defense in this matter. Defense counsel's suspension was based upon facts that predated appellant's trial by two years. Because the suspension was based upon an unrelated matter, we will not consider it in determining whether defense counsel was ineffective in the case sub judice.
 {¶ 50} Appellant's First Assignment of Error is overruled.
 II {¶ 51} Appellant maintains, in his Second Assignment of Error, the state committed prosecutorial misconduct when it presented its closing argument. We disagree.
 {¶ 52} Appellant challenges four statements made by the state during closing argument. These statements are as follows:
 {¶ 53} "Now, I want to talk a little bit about your oath and your promise. Regardless of how you feel about that now, he takes great pride in the fact that he writes a lot of seat belt tickets, and sometimes he uses the fact that you don't have a license plate on the front, you know, as a reason to stop a car. You may not agree with a practice like that.
 {¶ 54} "It's (sic) always bothered me a little bit, both personally and professionally, that troopers do that. That's what we call in this business a pretense or pretentual (sic) stop. It's allowed in the law pulling people over for minor traffic violations. It's not unheard of; it's not illegal, and frankly, it often leads to much bigger things. If officers didn't use their professional judgments to make those stops, robbers, rapists, murderers, fugitives from justice, and sometimes people carrying drugs would not be caught. These interstates are used by criminals just like they are you and me." Tr. Vol. II at 183-184.
 {¶ 55} In the next statement, the state commented on the truthfulness of Mr. Wallace. The prosecutor stated as follows:
 {¶ 56} "What reason does he have to lie? He's here telling you what he saw. He has nothing vested in it. He came and testified for the grand jury. He answered my phone calls. He answered his phone calls (INDICATING), and I don't think he got as much as what you're getting for your time." Id. at 189.
 {¶ 57} In the third statement, the state commented on the crack cocaine found by Trooper Reimer:
 {¶ 58} "This might be the only time in your life that you're going to see crack cocaine, but this is going to go back in the jury room. A very popular, very addictive, very — it will ruin your life, and there it is, and it was in his control (INDICATING.) Id. at 192.
 {¶ 59} The final argument appellant challenges concerns the state's comments as to the truthfulness of police officers. This statement provides as follows:
 {¶ 60} "They're asking you to not believe these officers and that they have come in here and lied and been selective in their memory, and only recalled what they wanted and made up what they couldn't remember. That's what you've been asked to believe. If you believe that when you leave this courtroom, you need to go home, pack up your family, pack your bags and figure out where you're going to go because we already know the criminals are against us. People that rob us, steal from us, break into our cars, vandalize our property, we already know that they're against us.
 {¶ 61} "If you believe — the people that you trust with badges and guns that go out and protect you, if you believe they're against you, then you better find someplace else to go. Thank you. Id. at 218-219.
 {¶ 62} The record indicates defense counsel did not object to any of the above statements made by the prosecutor during closing argument. An appellate court need not consider an error which could have been addressed or corrected if it could have been, but was not called to the attention of the trial court. State v.Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus, vacated in part on other grounds. Because defense counsel did not object to these statements by the prosecutor, we must examine this issue under the plain error doctrine. Plain error is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial court clearly would have been otherwise." See Crim.R. 52(B); State v. Underwood (1983),3 Ohio St.3d 12, 13.
 {¶ 63} Generally, a prosecutor's conduct at trial is not grounds for reversal unless that conduct deprives the defendant of a fair trial. State v. Loza, 71 Ohio St.3d 61, 78, overruled on other grounds. Both the prosecution and the defense have wide latitude during opening and closing arguments; questions as to the propriety of these arguments are generally left to the trial court's discretion. Loza at 78; State v. Brown (1988),38 Ohio St.3d 305, 317. A closing argument must be reviewed in its entirety to determine whether prejudicial effect occurred. Statev. Frazier, 73 Ohio St.3d 323, 342, 1995-Ohio-235. The test for prosecutorial misconduct is whether the prosecutor's comments were improper and, if so, whether those remarks prejudicially affected the defendant's substantial rights. State v. Eley,77 Ohio St.3d 174, 187, 1996-Ohio-323, overruled on other grounds;State v. Lott (1990), 51 Ohio St.3d 160, 165.
 {¶ 64} Upon reviewing the prosecutor's comments, we agree several of these statements made during closing argument were improper. The prosecutor improperly commented on the concept of a pretextual stop, which was never discussed during the trial. "It is indisputable that at the trial level it is highly improper for a lawyer to refer in colloquy, argument, or other context to factual matters beyond the scope of the evidence or the range of judicial notice." State v. Daugherty (1987), 41 Ohio App.3d 91,92-93.
 {¶ 65} The prosecutor also improperly vouched for the credibility of the troopers and Mr. Wallace. It is well established law that a prosecutor may not express a personal belief as to the truthfulness of a witness. State v. Jones
(1996), 114 Ohio App.3d 306, 315. Finally, the most egregious conduct occurred when the prosecutor told the jury that if they did not believe the testimony of the troopers, they should find some place else to live. Clearly, this statement is another attempt by the prosecutor to vouch for the truthfulness of the troopers' testimony.
 {¶ 66} Although we find the above statements to be improper, we do not conclude the statements prejudicially affected appellant's substantial rights. We believe the jury would have found appellant guilty, beyond a reasonable doubt, absent the prosecutor's comments, based upon the evidence presented by the state.
 {¶ 67} Accordingly, appellant's Second Assignment of Error is overruled.
 III {¶ 68} In his Third Assignment of Error, appellant maintains the trial court erred when it failed to state, on the record, at the sentencing hearing, its reasons for imposing a sentence in excess of the minimum sentence. We disagree.
 {¶ 69} In State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, the Ohio Supreme Court held that, "[p]ursuant to R.C. 2929.14(B), when imposing a nonminimum sentence on a first offender, a trial court is required to make its statutorily sanctioned findings at the sentencing hearing." Id. at paragraph two of the syllabus. Although the trial court did not state its reasons, on the record, for not imposing the minimum sentence, we conclude it was not required to do so because appellant is not a first-time offender. Rather, the record indicates appellant is currently serving a two-year federal prison sentence for a felony of the second degree.
 {¶ 70} Accordingly, we conclude the requirements of Comer
do not apply to appellant as he is not a first-time offender.
 {¶ 71} Appellant's Third Assignment of Error is overruled.
 {¶ 72} For the foregoing reasons, the judgment of the Court of Common Pleas, Muskingum County, Ohio, is hereby affirmed.
By: Wise, J.
Farmer, J., concurs.
Hoffman, P.J., concurs separately.