OPINION
{¶ 1} Appellant Jason Jordan, aka Tyquan Perry, aka Tiquan Murray, appeals his conviction, in the Muskingum County Court of Common Pleas, for possession of crack cocaine. The relevant facts leading to this appeal are as follows.
 {¶ 2} On May 22, 2001, Trooper Garic Warner of the Ohio State Highway Patrol observed a vehicle near mile marker 143 on Interstate 70, traveling fifty-five miles per hour, ten miles per hour under the posted speed limit. The vehicle's underside was emitting smoke and there appeared to be accident damage on the car's body. Trooper Warner also noticed the driver of the vehicle was not wearing a seatbelt and did not make an effort to put it on after the trooper began following him. As Trooper Warner passed the vehicle on the left side, he further noticed the vehicle did not display a front license plate. Trooper Warner therefore decided to stop the vehicle. Upon approaching the vehicle, Trooper Warner observed that appellant was a passenger in the vehicle being driven by Keith Mitchell. Neither appellant nor Mitchell were able to produce a registration or proof of insurance for the vehicle. Mitchell indicated the car belonged to his aunt.
 {¶ 3} Trooper Warner decided to detain the vehicle until he could verify whether the owner of the vehicle authorized Mitchell to use it. Trooper Warner patted down Mitchell and placed him in the back of his patrol cruiser. While Trooper Warner was conversing with Mitchell, he learned that Mitchell had previously been in prison for drug trafficking. Trooper Warner thereupon requested a K-9 unit be dispatched to the scene. In the meantime, appellant remained in the vehicle Mitchell had been driving.
 {¶ 4} Trooper Mark Ball soon arrived on the scene, with his K-9 partner, Ringo, and conducted a search of the vehicle. Ringo alerted to the driver's door. Trooper Warner removed appellant from the vehicle, conducted a pat-down search of appellant's person and had appellant sit on the interstate guardrail between Trooper Warner's and Trooper Ball's cruisers. Trooper Ball conducted the search of the vehicle. During the search, which produced a small amount of marihuana, Trooper Warner broke visual surveillance of appellant.
 {¶ 5} During the aforesaid search of the vehicle, a passing motorist, Roger Wallace, observed appellant throw something over the guardrail. Wallace used his cell phone to call the Ohio State Highway Patrol and inform them of what he had just observed. Shortly thereafter, Trooper Reimer arrived on the scene. Trooper Reimer informed Trooper Warner about Mr. Wallace's phone call. Trooper Reimer searched behind the guardrail, where appellant had been seated, and found a plastic baggie containing a hard white substance later determined to be 13.489 grams of crack cocaine.
 {¶ 6} On May 30, 2001, the Muskingum County Grand Jury indicted appellant for one count of possession of crack cocaine and one count of possession of marihuana. This matter proceeded to trial on March 18, 2003. Following deliberations, the jury returned a verdict finding appellant guilty of possession of crack cocaine and not guilty of possession of marihuana. On May 5, 2003, the trial court sentenced appellant to seven years in prison. Appellant timely filed a direct appeal from his conviction. On March 8, 2004, we affirmed the decision of the trial court. See State v. Jordan, Muskingum App. No. CT2003-0029,2004-Ohio-1211 ("Jordan I").
 {¶ 7} On October 22, 2004, appellant filed a pro se application for reopening his appeal. See App.R. 26(B). This Court granted the application on December 7, 2004, and subsequently appointed new appellate counsel. Appellant presently raises the following five Assignments of Error:
 {¶ 8} "I. APPELLANT'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COUNSEL FAILED TO ASSERT FOURTH AMENDMENT VIOLATIONS AT BOTH TRIAL AND INITIAL APPEAL.
 {¶ 9} "II. APPELLANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COUNSEL FAILED TO ASSERT SPEEDY TRIAL VIOLATIONS AT BOTH TRIAL AND INITIAL APPEAL.
 {¶ 10} "III. THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO JURY TRIAL BY MAKING CERTAIN FINDINGS IN VIOLATION OF BLAKELY V. WASHINGTON (2004),542 U.S. 296.
 {¶ 11} "IV. THE TRIAL COURT ERRED IN SUMMARILY DENYING APPELLANT THE RIGHT TO `FIRE' HIS RETAINED COUNSEL AND APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE SAID ISSUE ON APPEAL.
 {¶ 12} "V. TRIAL AND APPELLATE COUNSEL WERE INEFFECTIVE IN FAILING TO RAISE, AS ERROR, INFLAMMATORY REMARKS IN CLOSING ARGUMENT AT PAGES 217-218."
 I., II. {¶ 13} In his First and Second Assignments of Error, appellant contends he was denied the effective assistance of counsel.[1] We disagree.
 {¶ 14} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142,538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable professional assistance. Id.
 {¶ 15} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965, citing Lockhart v. Fretwell (1993), 506 U.S. 364, 370, 113 S.Ct. 838,122 L.Ed.2d 180.
 {¶ 16} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, 538 N.E.2d 373, quoting Strickland at 697.
 Lack of a Motion to Suppress {¶ 17} The focus of appellant's claim of ineffective assistance is the decision of his defense attorney not to file a motion to suppress.
 {¶ 18} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889;State v. Andrews (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271.
 {¶ 19} Appellant herein first challenges his trial counsel's decision not to challenge the propriety of the underlying traffic stop. A reviewing court, when determining whether a stop of a motor vehicle was proper, must consider the totality of the circumstances. State v.Anderson (1995), 100 Ohio App.3d 688, 692, 654 N.E.2d 1034. To justify an investigatory detention, a law enforcement officer must "demonstrate specific and articulable facts which, when considered with the rational inferences therefrom, would, in light of the totality of the circumstances, justify a reasonable suspicion that the individual who is stopped is involved in illegal activity." State v. Correa (1995),108 Ohio App.3d 362, 366, 670 N.E.2d 1035. See also, Terry, supra. When determining whether or not an investigative traffic stop is supported by a reasonable, articulable suspicion of criminal activity, the stop must be viewed in light of the totality of circumstances surrounding the stop. State v. Bobo (1988), 37 Ohio St.3d 177,524 N.E.2d 489, paragraph one of the syllabus.
 {¶ 20} In the case sub judice, trial counsel was faced with a fact pattern wherein Trooper Warner had effectuated the stop of Mitchell's vehicle upon noting a missing license plate (see R.C. 4503.21(A)), the lack of a seat belt utilized for the driver (see R.C. 4513.263), and visible damage and smoke about the front of the vehicle. "* * * [W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *." State v. Weimaster
(Dec. 21, 1999), Richland App. No. 99CA36 (citations omitted). Under the circumstances of this case, there was reasonable suspicion of illegal driving, and we are unpersuaded that trial counsel's decision not to pursue a suppression motion as to the traffic stop fell below an objective standard of reasonable representation.
 {¶ 21} Appellant secondly raises an ineffective assistance claim on the basis of trial counsel's decision not to suppress the results of the roadside detention. "Reasonable suspicion that a detainee is engaged in criminal activity must exist for as long as the detention does. The lawfulness of the initial stop will not support a `fishing expedition' for evidence of crime." State v. Smotherman (July 29, 1994), Wood App. No. 93WD082, citing State v. Bevan (1992), 80 Ohio App.3d 126, 130,608 N.E.2d 1099. However, "* * * if a police officer, during the initial detention of a motorist, ascertains additional specific and articulable facts which give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may further detain the motorist and conduct a more in-depth investigation." State v. Griffith
(Aug. 10, 1998), Madison App. No. CA97-09-044, citing State v. Robinette
(1997), 80 Ohio St.3d 234.
 {¶ 22} In the case sub judice, the traffic stop was effectuated at 7:23 PM. The record indicates that Mitchell, the driver, could not produce for the trooper the vehicle's registration or proof of insurance. Mitchell also made statements that he had prior drug trafficking offenses. At about that point, the trooper called for a K-9 unit to be dispatched. He continued to talk to Mitchell. Appellant was patted down at 7:41 PM, although nothing was discovered. Appellant was then ordered to sit on the guardrail. The K-9 unit arrived at 8:00, thirty-seven minutes after the initial stop. After Ringo alerted to the scent of drugs, appellant was removed from the vehicle to the guardrail, following which the passing motorist observed him throwing an item away from the scene.
 {¶ 23} We first recognize that "`[i]n the context of passengers of motor vehicles involved in investigatory traffic stops, an officer may order the passengers to get out of the vehicle pending completion of the stop.'" State v. Schmitzer (May 30, 2002), Ashland App. No. 01COA01443, quoting State v. Isbele (2001), 144 Ohio App.3d 780, 784,761 N.E.2d 697, citing Maryland v. Wilson (1997), 519 U.S. 408, 414,117 S.Ct. 882, 137 L.Ed.2d 41. We further note that the delay related to awaiting the arrival of the K-9 unit in this case is not the sole issue at this juncture. Trooper Warner testified that Mitchell first failed to produce registration or proof of insurance, and told him that his "Aunt Betty" owned the car. Tr. at 37. He later stated that it was actually his aunt's friend. Tr. at 72. Trooper Warner had his dispatcher run a LEADS check, which indicated the car was owned by Cortisa Mullins. Tr. at 37. Appellant then told the trooper he had the owner on his cell phone under the initials "T.C." Tr. at 38. However, neither appellant nor Mitchell could give the name of Cortisa Mullins. Id. Hence, the trooper became suspicious of the visibly damaged vehicle having been stolen; in addition, he "was seeing several of the indicators [of drug trafficking] here, driving the slow speed, owner wasn't present with the vehicle, driver or anyone in the vehicle — no one knew who owned the car." Tr. at 39.
 {¶ 24} Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted. State v. Butcher, Holmes App. No. 03 CA 4, 2004-Ohio-5572, ¶ 26, citing State v. Robinson (1996), 108 Ohio App.3d 428, 433,670 N.E.2d 1077. We conclude appellant was not prejudiced by defense counsel's failure to file a motion to suppress the fruits of the traffic stop and roadside detention.
 Lack of Statutory Speedy Trial Claim {¶ 25} Appellant next contends his trial counsel was ineffective for failing to raise a statutory speedy trial claim. The record reveals the Muskingum County Grand Jury indicted appellant on May 30, 2001, and bond was set at $50,000. According to the return of service, appellant was personally served with the indictment by a sheriff's deputy on May 31, 2001. He was arrested the same day. Appellant was not arraigned, however, until February 20, 2003. Appellant posted bond on February 26, 2003; said bond was revoked on March 5, 2003. The trial then commenced on March 18, 2003.
 {¶ 26} The right to a speedy trial is encompassed within the Sixth
Amendment to the United States Constitution. The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. State v. Ladd
(1978), 56 Ohio St.2d 197, 383 N.E.2d 579; State v. Pachay (1980),64 Ohio St.2d 218, 416 N.E.2d 589. Ohio's Speedy Trial statute codifies the constitutional guarantee of a speedy trial. Pachay, supra. Our initial task in reviewing a speedy trial issue is to count the days of delay chargeable to either side and determine whether the case was tried within the time limits set by R.C. 2945.71. Oregon v. Kohne (1997), 117 Ohio App.3d 179, 180, 690 N.E.2d 66; State v. DePue (1994),96 Ohio App.3d 513, 516, 645 N.E.2d 745. R.C. 2945.71(C)(2) mandates that a person against whom a charge of felony is pending shall be brought to trial within two hundred seventy days after the person's arrest.
 {¶ 27} Appellant argues that the trial court record contains no judgment entries extending the trial date, nor does it indicate any waiver of speedy trial rights. He thus urges that his trial counsel was ineffective for failing to seek dismissal of what appears on the surface to be a violation of the aforesaid 270-day speedy trial rule. However, the trial court record reveals the following exchange, prior to trial, concerning appellant's attire in the courtroom:
 {¶ 28} "THE COURT: I assumed you would put the clothes on you had down at the jail.
 {¶ 29} "MR. PERRY[AKA JORDAN]: They never left this building. I never left with my clothes. My clothes have been here the whole entire time.
 {¶ 30} "THE COURT: You came in here when?
 {¶ 31} "MR. PERRY: 2001 of —
 {¶ 32} "THE COURT: Well, that's been a couple years ago. And then you went to another prison?
 {¶ 33} "MR. PERRY: Yeah, with the jail clothes on. I went to the other prison with these county clothes on." Tr. at 8.
 {¶ 34} Furthermore, at the sentencing hearing on May 5, 2003, Muskingum Probation Officer Doug Pollock testified that appellant was "currently serving a two-year sentence for a federal charge." Tr. II at 5. This is supported by a federal detainer filed in the trial court record, dated February 12, 2003, indicating a twenty-four month sentence for conspiracy to defraud and possession of counterfeit notes. In addition, appellant's counsel for the sentencing hearing in the case sub judice indicated: "In June of 2001, the federal authorities picked him up, took him to Pennsylvania, he was sentenced to two years, and they inadvertently left him in the Pennsylvania jail." Tr. II at 7-8.
 {¶ 35} A defendant who is in federal custody is "unavailable" for trial and the time spent in the custody of federal authorities tolls the speedy trial time requirement, assuming the State has used due diligence to secure the availability of such defendant. State v. Miller (Aug. 14, 2000), Butler App. No. CA99-06-098, citing State v. Howard (1992),79 Ohio App.3d 705, 707-708, 607 N.E.2d 1121; State v. Pickens (July 1, 1983), Erie App. No. E-83-4. In Ohio, a properly licensed attorney is presumed competent. See Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,209 N.E.2d 164. Furthermore, our review on appeal is limited to those materials in the record that were before the trial court. See, e.g.,State v. DeMastry, 155 Ohio App.3d 110, 119-120, 799 N.E.2d 229,2003-Ohio-5588, citing State v. Ishmail (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500. The record before us makes apparent the existence of a significant hindrance, in the form of appellant's federal custody status, to a successful claim on speedy trial grounds, and we are therefore unpersuaded that appellant's trial counsel's decision not to pursue the issue fell below an objective standard of reasonable representation under the facts and circumstances presented.
 {¶ 36} Appellant's First and Second Assignments of Error are therefore overruled.
 III. {¶ 37} In his Third Assignment of Error, appellant contends the trial court erred by making certain findings during sentencing in violation ofBlakely v. Washington (2004), 542 U.S. 296. We disagree.
 {¶ 38} Appellant specifically claims that the probation investigator's testimony at the sentencing hearing, concerning the presumption of prison and the existence of four recidivism factors, violated Blakely, supra, in which the United States Supreme Court held that if a defendant's sentence is increased beyond the maximum range allowed for the offense, the facts to support that increase must either be heard by a jury under a beyond a reasonable doubt standard, or admitted by the defendant. See, also,Apprendi v. New Jersey (2000), 530 U.S. 466, 490.
 {¶ 39} However, where a defendant's individual sentences are each less than the statutory maximum, Blakely and Apprendi are not applicable. SeeState v. Taylor, 158 Ohio App.3d 597, 2004-Ohio-5939, ¶ 25-26. In the case sub judice, appellant was convicted on one count of possession of crack cocaine, a felony of the second degree, and sentenced to seven years in prison. In Ohio, the range for a second-degree felony is between two and eight years. R.C. 2929.14(A)(2).
 {¶ 40} Accordingly, we herein find no merit in appellant's claim, pursuant to Blakely, that the trial court erroneously sentenced him by relying on facts that were not admitted by appellant nor found by a jury.
 {¶ 41} Appellant's Third Assignment of Error is therefore overruled.
 IV. {¶ 42} In his Fourth Assignment of Error, appellant argues the trial court erred in preventing him from firing his trial counsel.
 {¶ 43} Appellant first points out that his trial counsel was suspended from the practice of law on March 19, 2003, which was coincidentally the second day of the two-day trial at issue in the case sub judice. SeeOffice of Disciplinary Counsel v. Treneff, 98 Ohio St.3d 348,785 N.E.2d 434, 2003-Ohio-1011. However, our review of the record gives no indication that word of the Ohio Supreme Court's disciplinary ruling reached the trial judge or anyone in the courtroom on that day. In Statev. Allen (1997), 121 Ohio App.3d 666, 672, 700 N.E.2d 682, the court cited a federal appellate case, United States v. Stevens (C.A.10, 1992),978 F.2d 565, for the proposition that "legal assistance provided by an attorney who had been disbarred by the federal court, but who did not receive notification of the disbarment until after trial, did not constitute error in the absence of demonstrated prejudice." Id. at 567-568. We therefore do not find the existence of a per se violation of appellant's rights based solely on defense counsel's suspension.
 {¶ 44} We next address the issue of appellant's right to fire his retained attorney. The Sixth Amendment, made applicable to the states through the Fourteenth Amendment, guarantees that a defendant in a criminal trial has an independent right of self representation and that he may proceed to defend himself without counsel when he voluntarily, knowingly and intelligently elects to do so. State v. Gibson (1976),45 Ohio St.2d 366, 345 N.E.2d 399, paragraph one of the syllabus, citingFaretta v. California (1975), 422 U.S. 806, 819, 95 S.Ct. 2525,45 L.Ed.2d 562. An effective waiver requires the trial court to "* * * make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right." Gibson, paragraph two of the syllabus.
 {¶ 45} The colloquy in the trial court on this issue, which took place at the end of the first day of the trial, consisted solely of the following:
 {¶ 46} "THE COURT: Do you want to say something now?
 {¶ 47} "MR. PERRY [AKA JORDAN]: Yeah. I wanted to — I don't feel comfortable with my counsel and I want to fire him.
 {¶ 48} "THE COURT: Well, we don't play musical lawyers around here. You happen to have one of the finest lawyers in the Columbus area, and you're lucky to have him and he's going to be your lawyer throughout the rest of the case." Tr. at 1571-58.
 {¶ 49} Based on the foregoing, we are compelled to remand this assigned error to the trial court for further inquiry on the record of appellant's claim of unsatisfactory counsel, over and above any issues which have already been addressed either in the present appeal or inJordan I. If the trial court finds the claim is unfounded, the trial court may re-enter the judgment and sentence. Accord State v. Murphy
(Feb. 22, 2000), Richland App. No. 99CA48.
 {¶ 50} Appellant's Fourth Assignment of Error is sustained in part.
 V. {¶ 51} In his Fifth Assignment of Error, appellant contends the State committed prosecutorial misconduct during its closing argument. We disagree.
 {¶ 52} In Jordan I, appellant challenged four statements made by the State during closing argument. He presently adds to this the State's closing argument comparison of appellant's defense to that of the defense of O.J. Simpson during his 1995 California murder trial (Tr. at 217), and the State's reference to criminals who "steal from us, break into our cars, [and] vandalize our property." Tr. at 218.
 {¶ 53} Generally, a prosecutor's conduct at trial is not grounds for reversal unless that conduct deprives the defendant of a fair trial.State v. Loza, 71 Ohio St.3d 61, 78, 641 N.E.2d 1082. Upon review, even if we were to find these additional statements to be improper, we do not conclude the statements prejudicially affected appellant's substantial rights.
 {¶ 54} Accordingly, appellant's Fifth Assignment of Error is overruled.
 {¶ 55} For the foregoing reasons, the judgment of the Court of Common Pleas, Muskingum County, Ohio, is hereby affirmed in part, reversed in part, and remanded.
Wise, J. Edwards, J., concur.
Hoffman, P.J., concurs in part and dissents in part.
[1] Appellant raises both ineffectiveness of trial counsel and ineffectiveness of his first appellate counsel. As we have already granted the motion to reopen in this case, we need not further address the latter issue, and we will herein focus on the performance of his trial counsel.