[Cite as *State v. Martin*, 2016-Ohio-802.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                          :          APPEAL NO. C-150054
                                                   TRIAL NO. B-1402350
    Plaintiff-Appellee,              :
                                                   *O P I N I O N.*
  vs.                                  :

RONALD MARTIN,                          :

    Defendant-Appellant.             :


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  March 4, 2016


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Melynda J. Machol*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michaela M. Stagnaro*, for Defendant-Appellant.


Please note:  this case has been removed from the accelerated calendar.

**MOCK, Judge.**

{¶1}    After a bench trial, defendant-appellant Ronald Martin was convicted of rape and kidnapping.  He had also been found guilty of two counts of gross sexual imposition, but the trial court merged those counts with the rape conviction.  Since the victim was nine years old when she was attacked, and since the trial court found that Martin had used force, Martin was sentenced to 25 years to life in prison for rape, and 15 years to life for kidnapping.  The trial court ordered Martin to serve those sentences consecutively.

{¶2}    In five assignments of error, Martin now appeals his convictions and sentences.  He first argues that the trial court improperly denied his motion to suppress the statement he made to police.  He next argues that the trial court erred when it allowed hearsay testimony of the victim through her mother.  Martin's third assignment of error alleges that the trial court improperly allowed a law-enforcement witness to testify as an expert.  He then argues that his convictions were based on insufficient evidence or where contrary to the manifest weight of the evidence.  Finally, he claims that his sentences were improper.  We affirm.

### Martin Lures Child-Victim into His Apartment and Sexually Assaults Her

{¶3}    According to testimony presented at trial, nine-year-old T.T. was playing hide-and-seek with a friend near some apartments on Losantiville Avenue in Cincinnati, Ohio in April 2014.  While T.T. was alone looking for her friend, Martin approached her and ordered her to come into his apartment building and up to his apartment on the second floor.  According to video from an exterior security camera on the building, this occurred at approximately 7:30 p.m.  She went with him into the apartment, and Martin closed the door behind her.  After engaging with the child for a few minutes, he told her

to go into his bedroom. Once there, he told her to pull down her pants. According to the testimony provided by the child, he then licked her "private part." In the statement he gave to police, Martin said that he put his mouth on her. When further questioned, Martin made it clear that he placed his mouth on her vagina because he was "curious." When he finished, he gave the child two Barbie dolls and told her not to tell anyone what had happened. The video camera captured her leaving at approximately 8:00 p.m.

{¶4}    The child immediately went home, and went into the bathroom and slammed the door. Her mother presumed that she was upset with one of her friends, and went to investigate. The child began pacing, looked at her mother, went into her room, and then came back out. Her mother testified that she thought her daughter was "trying to work up a way to tell [me] something." The child continued to fidget, play with her fingers, and shake while trying to tell her mother what had happened. Finally, she said that "grown people are messing with me." When her mother asked what she meant, she said that a man had put his face on her private area and licked her. The child's mother immediately called the police.

{¶5}    Martin was brought downtown for questioning that evening at 10:24 p.m. Martin waited in the room, sleeping at times, until detectives Hollis Hudepohl and Kimberly Kelly came to speak with him at 12:24 a.m. Before questioning began, he was advised of his *Miranda* rights. Martin said that he understood his rights, signed the waiver presented to him, and told the detectives that he wished to speak with them. Martin told the detectives that he had been drinking beer and wine that day. When he was asked if he was under the influence at that time, he said he was not. Hudepohl testified that Martin had no slurred speech, had a normal response time to questions, and had no problems with physical coordination. Based on her experience with

3

detecting impairment and her past encounters with intoxicated individuals, she did not believe that Martin was impaired during the interview.

{¶6}    Martin initially denied having even met the girl, but eventually made progressively incriminating statements.  He first admitted he met her, he then admitted that he had her in his apartment.  He claimed that he invited her in only to tell her how dangerous it was to follow a stranger into his apartment.  He eventually admitted to putting his mouth on her.  The interview concluded at 2:43 a.m., when he was arrested and transported to the Hamilton County Justice Center.

### Trial Court Properly Denied Motion to Suppress

{¶7}    In his first assignment of error, Martin claims that his confession was involuntary because he was intoxicated at the time, and because he was denied water.  In determining whether a defendant's statement is made voluntarily, courts employ a "totality of the circumstances" test.  *State v. Wiles*, 59 Ohio St.3d 71, 81, 571 N.E.2d 97 (1991).  Courts consider a variety of factors including the age, mentality and prior criminal experience of the accused; the length, intensity, and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement to determine whether the statement was "the product of a free and deliberate choice, or the result of police coercion and overreaching."  *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229 ¶ 32; *see State v. Edwards*, 49 Ohio St.2d 31, 40-41, 358 N.E.2d 1051 (1976); *Colorado v. Connelly*, 479 U.S. 157, 163, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).  "The suppression of a statement is properly denied on the basis of its voluntariness where the record discloses substantial evidence upon which the trial court, applying the above criteria, might have concluded, by a preponderance of the evidence that the statement was made voluntarily."  *State v.*

*Rogers*, 1st Dist. Hamilton No. C-000299, 2000 Ohio App. LEXIS 6203, *8 (Dec. 29, 2000).

{¶8} At the hearing on the motion to suppress, Hudepohl testified that, based on her observation of Martin throughout the course of the interrogation, he did not appear to be intoxicated. He seemed alert, he did not slur his speech, he did not appear to be unable to control his motor functions, and his answers to questions—while often self-serving and evasive—were appropriate. A review of the video recording of the interrogation supports those observations. And while Martin told Hudepohl that he had been drinking that day, he told her that he was not intoxicated when she asked him directly about it. Based on this record, there was sufficient evidence to support the trial court's conclusion that Martin's statement was not rendered involuntary by his intoxication.

{¶9} Additionally, we find that Martin's claim that he was denied water through the course of the interrogation did not render his statements involuntary. Martin asked officers if he could have water when he first arrived. It appears that the officer he asked simply forgot. At no time during his interrogation did he repeat his request. The detectives never denied him water nor was he told that he could only have water if he satisfactorily answered their questions. It was not until the interrogation ended that Martin made a second request for water, which he was given immediately.

{¶10} We conclude that the record supports the trial court's determination that, under the totality of the circumstances, Martin's confession was voluntary. We overrule his first assignment of error.

**Statements by Child-Victim**
**Constituted Excited Utterances**

{¶11} In his second assignment of error, Martin claims that the trial court improperly concluded that the statement that T.T. made to her mother about what happened to her was an excited utterance. We disagree.

{¶12} Evid.R. 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Excited utterances are reliable because they do not entail an opportunity for the declarant to reflect, thus reducing the chance to fabricate or distort the truth. *State v. Wallace*, 37 Ohio St.3d 87, 88, 524 N.E.2d 466 (1988); *State v. Lukacs*, 1st Dist. Hamilton Nos. C-090309 and C-090310, 2010-Ohio-2364, ¶ 20.

{¶13} When analyzing a statement as an excited utterance, "[t]he controlling factor is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *Lukacs* at ¶ 21, quoting *State v. Tebelman*, 3d Dist. Putnam No. 12-09-01, 2010-Ohio-481, ¶ 29. We review the decision to allow the admission of a hearsay statement under the excited-utterance exception under the abuse-of-discretion standard. *See State v. Borden*, 1st Dist. Hamilton No. C-140245, 2015-Ohio-333, ¶ 5, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.

{¶14} Martin argues that too much time had passed for this hearsay exception to apply, stressing that it relies on the statement being made quickly after the event. But, as we have previously noted,

> [c]ourts liberally apply this test to out-of-court statements made by children because of their limited powers of reflection. Further, the passage of time is not dispositive of whether a statement is an excited

utterance, particularly in the case of child-abuse victims, who are likely to remain in a state of nervous excitement longer than an adult.

*Lukacs* at ¶ 21, citing *State v. Taylor*, 66 Ohio St.3d 295, 304, 612 N.E.2d 316 (1993).

{¶15} In this case, the evidence showed that T.T. was still in a state of nervous excitement caused by what had just happened to her at the point when she was able to articulate it to her mother. The evidence also showed that she did not have the opportunity to reflect on the events and fabricate a false statement. Therefore, the trial court did not abuse its discretion in allowing T.T.'s mother to testify regarding T.T.'s out-of-court statement. The second assignment of error is overruled.

### Admission of Officer's Testimony was not an Abuse of Discretion

{¶16} In his third assignment of error, Martin claims that the trial court improperly allowed Hudepohl to testify as an expert witness under Evid.R. 702 when she made the statement that a display of toys in Martin's apartment was appealing to children and that she had seen similar displays frequently in her work. We reject the argument that testifying that toys are enticing to children requires qualification as an expert witness. A police office may offer lay opinion testimony under Evid.R. 701 if it is based on the officer's perceptions through experience. *State v. Jordan*, 5th Dist. Muskingum No. CT2003-0029, 2004-Ohio-1211; *State v. Fannin*, 8th Dist. Cuyahoga No. 79991, 2002-Ohio-6312, ¶ 40. A trial court's decision to admit evidence under either Evid.R. 701 or Evid.R. 702 is reviewed under an abuse-of-discretion standard. *See Urbana ex rel. Newlin v. Downing*, 43 Ohio St.3d 109, 539 N.E.2d 140 (1989). On this record, we find no abuse of discretion.

{¶17} But even if the decision to allow the statement was an abuse of discretion, we would have to conclude that any error was harmless. *See* Crim.R. 52(A).

7

"Whether [the] error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. Instead, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 78.

{¶18}   In this case, the reference to the toys was so incidental, and the other evidence so compelling, that we cannot conclude that Hudepohl's observation that toys are enticing to children contributed to the convictions in this case.  We overrule Martin's third assignment of error.

## Trial Court Properly Found Martin Guilty

{¶19}   In his fourth assignment of error, Martin challenges the sufficiency and weight of the evidence adduced to support his convictions.  We find no error.

{¶20}   In reviewing a challenge to the sufficiency of the evidence, this court must determine whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  In addressing a manifest-weight-of-the-evidence challenge, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.  *Id.* at 387.

{¶21}   Martin claims that the state failed to prove he committed rape.  He first argues that the state failed to show that he engaged in cunnilingus because the state failed to prove contact between his mouth and T.T.'s "sex organ."  We disagree.  T.T. described the offense and pointed to the area on a diagram during her testimony.  And

8

when questioned by Hudepohl, Martin admitted that he "put his mouth on her." When Hudepohl went on to clarify "[a]nd you kissed her vagina," Martin said "[r]ight, right, right." On this record, the state produced sufficient evidence of cunnilingus to support the rape conviction.

{¶22} Martin next argues that the lack of DNA evidence disproves the rape conviction. While the absence of DNA evidence is probative, it is not dispositive. It was one factor that the trial court could weigh as it heard the evidence. But, in light of the fact that Martin admitted to the conduct, and his version of events was corroborated by the victim and by the video surveillance evidence, the trial court did not err by failing to consider the lack of DNA evidence dispositive. *See State v. Barnes*, 2d Dist. Montgomery No. 25517, 2014-Ohio-47, ¶ 3 (the absence of DNA evidence of sexual contact does not render a conviction against the manifest weight of the evidence).

{¶23} Martin next argues that the testimony of the victim was not credible, because she initially could not remember the events and was only able to testify about them when the state started using leading questions. But the trial court, conducting a bench trial, was in the best position to judge T.T.'s credibility. The trial court could have understandably concluded that the nine-year-old victim was nervous and reluctant to recount the events of that day while Martin watched from the defense table. And, in light of Martin's own admissions, her hesitation is not so catastrophic that it undermines the state's case.

{¶24} With regard to the kidnapping conviction, Martin claims that the state failed to provide sufficient evidence of force and that T.T. was not released unharmed after the incident. We disagree.

{¶25} "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). The

9

amount of "force" that an adult may use in order to facilitate an offense against a child is not the same as with an adult. In speaking of force in the context of rape, the Ohio Supreme Court has held that "[t]he force and violence necessary to commit the crime of rape depends upon the age, size, and strength of the parties and their relation to each other," *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph one of the syllabus, and "need not be overt and physically brutal, but can be subtle and psychological." *State v. Fowler*, 27 Ohio App.3d 149, 154, 500 N.E.2d 390 (8th Dist.1985). A showing that the victim's will was overcome by fear or duress is enough to demonstrate that the rape was committed with force. *Eskridge*.

{¶26} In this case, T.T. was a nine-year-old girl and Martin was a 64-year-old man that she did not know. Martin told the detectives that he was angry about T.T. running around the apartment building making noise. He said that he wanted to teach the girl a lesson and ordered her into his apartment. He used this angry and aggressive tone and ordered T.T. to come with him upstairs and kept her there for 30 minutes while he raped her. The difference in ages, Martin's physically intimidating presence as it compared to the child, and his anger and assumed authority to "teach her a lesson" combined to overcome T.T.'s ability to resist his demands. With this evidence, the trial court could properly have found that the amount of force used in this case was sufficient.

{¶27} We also reject the argument that T.T. was released unharmed. She had been raped. Releasing a victim after a rape does not leave the victim in an "unharmed condition." *See State v. Dooley*, 8th Dist. Cuyahoga No. 84206, 2005-Ohio-628, ¶ 24, citing *State v. Avery*, 126 Ohio App.3d 36, 44, 709 N.E.2d 875 (3d Dist.1998).

{¶28} Having reviewed the entire record, we find that Martin's convictions were based on sufficient evidence and were not against the weight of the evidence. We overrule his fourth assignment of error.

**Martin Was Properly Sentenced**

{¶29}   In his final assignment of error, Martin claims that he was improperly sentenced.  He first claims that the rape and kidnapping offenses were allied offenses of similar import.

{¶30}   Under R.C. 2941.25, a trial court must merge allied offenses if the conduct of the defendant can be construed to constitute two or more allied offenses of a similar import, and this conduct shows that the offenses were not committed separately or with a separate animus.  *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 74.   The determination of whether offenses are allied contemplates "three separate factors—the conduct, the animus, and the import."  *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the syllabus.  Separate convictions are permitted for allied offenses if the offenses were (1) dissimilar in import or significance, (2) committed separately, or (3) committed with a separate animus or motivation.  *Id.* at paragraph three of the syllabus. A reviewing court may end its analysis upon finding that any one of the three applies. *Bailey* at ¶ 83.

{¶31}   Restraint, confinement and movement may be implicit in every rape, but "where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense," the conduct constituting kidnapping is committed separately from the rape.  *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979), syllabus.  As the *Logan* court noted, "[s]ecret confinement, such as in an abandoned building or nontrafficked area, without the showing of any substantial asportation, may, in a given instance, also signify a separate animus and support a conviction for kidnapping apart from the commission of an underlying offense." *Id.* at 135.

{¶32} The question becomes whether the victim was subjected to a substantial increase in the risk of harm separate from that involved in the underlying crime. *See id.* In this case, T.T. was ordered from the outside area where she was playing, up the stairs, and into Martin's apartment where he then closed the door behind them. He then held her for some time in his living room before forcing her into his bedroom where he performed cunnilingus on her. Under the facts of this case, we conclude that the trial court properly determined that the secretive confinement so increased the risk of harm to the nine-year-old T.T. that it constituted a separate animus sufficient to support his conviction. *See State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 118 (abducting victim from street and taking her to a vacant apartment where he raped and killed her demonstrates a separate animus for the kidnapping offense); *State v. Hill*, 64 Ohio St.3d 313, 332, 595 N.E.2d 884 (1992) (separate animus for kidnapping where defendant forced a 12-year-old victim from a parking lot to a wooded area where he then raped and murdered him); *State v. Powell*, 49 Ohio St.3d 255, 261-262, 552 N.E.2d 191 (1990) (kidnapping upheld as a separate offense where defendant lured a child from her home to a nearby building where he attempted to rape her and then killed her).

{¶33} Martin next argues that the trial court improperly enhanced his sentences because the state failed to show the use of force and failed to show that T.T. was not released unharmed. Force is a factor which, if demonstrated on the rape conviction, enhanced Martin's sentence to 25 years to life in prison. R.C. 2971.03(B)(1)(c). Martin's failure to release T.T. unharmed is a factor which, if demonstrated on the kidnapping conviction, enhanced Martin's sentence to 15 years to life. R.C. 2905.01(C)(3)(b). For the reasons set forth in our analysis of Martin's fourth assignment of error, we conclude that the trial court properly concluded that Martin

used force and that he did not release T.T. unharmed. Therefore, Martin's sentences were properly enhanced.

{¶34} Martin next argues that his sentences were improper because he was not informed that he was ineligible for earned days of credit based on his convictions. But this court has previously rejected this argument. *See State v. Kennedy*, 2013-Ohio-4221, 998 N.E.2d 1189, ¶ 122 (1st Dist.).

{¶35} Finally, he argues that the trial court imposed maximum, consecutive sentences without properly considering the purposes and principles of sentencing or any of the factors set forth in R.C. 2929.11(B) and 2929.12(A)-(E). This court will only modify or vacate a sentence if it clearly and convincingly finds that either the record does not support the mandatory sentencing findings or the sentence is otherwise contrary to law. *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.).

{¶36} The trial court's remarks at the sentencing hearing show that it considered the relevant sentencing provisions. The trial court discussed Martin's prior record, history of unsuccessful probation, chronic substance abuse, and lack of remorse, as well as the significant harm to the victim. Further, the court made the required findings to impose consecutive sentences, and journalized those findings in its sentencing entry. *See State v. Thomas*, 1st Dist. Hamilton No. C-140070, 2014-Ohio-3833, ¶ 9. And the record supports those findings.

{¶37} We conclude that Martin was properly sentenced in this case. We overrule his fifth assignment of error.

13

### Conclusion

{¶38}    Having considered and overruled all five assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**DEWINE, P.J.,** and **STAUTBERG, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.



14