JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant John Dooley ("Dooley") appeals his conviction and sentence for kidnapping, gross sexual imposition, and intimidation. Finding no merit to this appeal, we affirm.
 {¶ 2} Dooley was charged with intimidation, ten counts of gross sexual imposition, and two counts of kidnapping. The indictment alleged that, in November 2000 through May 2001, Dooley compelled his step-grandson, D.H., and his step-granddaughter, M.H., to submit to sexual contact through the use of force on ten separate occasions while the children were residing in their grandmother's home. The indictment further alleged two separate counts of kidnapping involving each victim and that Dooley threatened M.H. if she reported any of the incidents. At the time of the offenses, D.H. was age 15 and M.H. was age 16.
 {¶ 3} The State dismissed the sexual violent predator specifications attached to the gross sexual imposition and kidnapping counts prior to trial and the matter proceeded to a bench trial, where the following evidence was presented.
 {¶ 4} D.H. testified that Dooley touched him inappropriately on five occasions. The first incident occurred when Dooley took him by the hand and led him into the bathroom, where he put his hands down D.H.'s pants and "grabbed" his buttocks. D.H. stated that he tried to leave the bathroom but Dooley held him back. After releasing him, Dooley warned D.H. not to tell anyone about the incident. Shortly thereafter, D.H. confided in Dooley's adult son, whom he considered to be an uncle. After Dooley's son "shrugged it off," D.H. thought that no one else would believe him.
 {¶ 5} The second incident occurred one evening while D.H. was lying on a mattress in the living room. Dooley placed his hands down the front of D.H.'s pants and fondled D.H.'s penis for approximately five minutes. D.H. testified that he "tried to get up and get away." He was able to go outside to the porch, where Dooley again
 {¶ 6} placed his hands down the front of D.H.'s pants and grabbed his penis. Each time D.H. tried to get away, Dooley pulled him back, holding him by his chest to restrain him.
 {¶ 7} Shortly thereafter, the fourth incident occurred on the porch while D.H. and Dooley were smoking a cigarette. D.H. attempted to go back inside the house, but Dooley pulled him down on his lap and placed his hands inside D.H.'s pants. While fondling D.H.'s penis, Dooley repeatedly remarked, "I don't know what I am going to do with you."
 {¶ 8} The final incident occurred when Dooley got into bed with D.H.'s younger brother. D.H. told his brother to go downstairs. After his brother left the room, Dooley got into bed with D.H. and placed his head on his chest, "kissing and sucking" his nipple. D.H. testified that there was "no way to get out" because Dooley blocked the only open area to exit the bed. Dooley remained in the bed until his younger brother returned upstairs with M.H. and their grandmother.
 {¶ 9} D.H.'s testimony regarding the bedroom incident was corroborated by his younger brother and M.H., who both testified that Dooley was in bed with D.H. with his arms wrapped around him. They further testified that D.H. was not released until they entered the room and their grandmother ordered Dooley out of the bed.
 {¶ 10} M.H. further testified regarding several inappropriate advances Dooley made toward her, including kissing her cheek, patting her buttocks, and squeezing close to her chest. She testified that on three occasions Dooley entered the bathroom and tried to kiss her "belly button." He would touch her "belly button" and try to "play" with it until she was able to get away from him. On another occasion, while Dooley was outside on the front porch with M.H., he pulled her onto his lap and rubbed her thigh. M.H. further testified that Dooley threatened to harm her grandmother if M.H. reported any of the incidents. M.H. explained that she was reluctant to report the incidents because she feared having no place to live.
 {¶ 11} At the close of the State's case, Dooley moved for an acquittal of all the charges. The court granted his motion as to three of the five gross sexual imposition counts involving M.H. and one count of kidnapping involving M.H.
 {¶ 12} Dooley's wife testified on his behalf, claiming that her grandchildren never complained of any inappropriate incidents involving Dooley. She further testified that the bedroom incident never occurred.
 {¶ 13} Dooley testified that none of the alleged offenses occurred. On cross-examination, he admitted that he had been convicted and sentenced to prison in 1987 for attempted gross sexual imposition, involving his then 11-year-old daughter.
 {¶ 14} The trial court found Dooley guilty of the remaining counts, classified him as a sexual predator, and sentenced him to four years in prison for kidnapping, eighteen months on each count of gross sexual imposition, and three years for intimidation, all to run concurrently.
 {¶ 15} Dooley appeals, raising four assignments of error.
 Sufficiency of the Evidence {¶ 16} In his first two assignments of error, Dooley argues that there was insufficient evidence to convict him of kidnapping and gross sexual imposition.
 {¶ 17} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production. State v. Thompkins, 78 Ohio St.3d 380, 390,1997-Ohio-52. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 18}
Dooley was convicted of one count of kidnapping under R.C. 2905.01(A)(4), which provides:
"No person, by force, threat, or deception * * * shall * * * restrainthe liberty of the other person, for any of the following purposes:
• * *
(4) To engage in sexual activity, as defined in section 2907.01 of theRevised Code, with the victim against the victim's will[.]"
 {¶ 19} In the context of the statute, "sexual activity" includes "sexual contact," which is defined under R.C. 2907.01(B) as:
"[A]ny touching of an erogenous zone of another, including withoutlimitation the thigh, genitals, buttock, pubic region, or, if the personis a female, a breast, for the purpose of sexually arousing or gratifyingeither person."
 {¶ 20} Dooley contends that the State failed to produce any evidence that he engaged in "sexual activity" to support the kidnapping charge. He claims that the evidence revealed that he merely kissed and sucked the male victim's nipple, which he argues does not constitute "sexual contact" as defined under R.C. 2907.01. We disagree.
 {¶ 21} R.C. 2907.01(B) does not provide an exhaustive list of erogenous zones. Thus, the mere fact that a male's breast is excluded from the list does not automatically eliminate it as an erogenous zone. As noted by the Sixth Appellate District in State v. Poirer, Lucas App. Nos. L-01-1479, L-01-1480, L-01-1481, 2002-Ohio-4218, "[U]nder a certain factual scenario, a male breast could be considered an erogenous zone if, as R.C. 2901.01(B) provides, it is touched `for the purpose of sexually arousing or gratifying either person.'" Here, the evidence demonstrated that Dooley got into bed with D.H. and placed his head on D.H.'s chest while kissing and sucking D.H.'s nipple. Under these circumstances, we find that the trial court correctly found that the breast was an erogenous zone.
 {¶ 22} Next, Dooley argues that the State failed to prove the requisite force element to support a kidnapping conviction. We disagree. The testimony revealed that Dooley had his arm around D.H., preventing him from getting out of the bed, while he committed gross sexual imposition. Further, D.H. testified that he was unable to break free from Dooley because Dooley blocked the only open area from which to exit the bed. Moreover, the victim's brother testified that he called for help in order to get Dooley out of the bed. Based on this testimony, we find there was sufficient evidence for the trier of fact to conclude that Dooley used force to restrain D.H.
 {¶ 23} Finally, Dooley argues that the evidence supported only a conviction for second degree kidnapping pursuant to R.C. 2905.01(C). This provision states in part that the offense of kidnapping will be reduced to an aggravated felony of the second degree if "the offender releases the victim in a safe place unharmed." Although he acknowledges that his trial counsel failed to present any mitigation evidence regarding the "safe release" defense provided under R.C. 2905.01(C), Dooley urges this court to apply the lesser degree felony under the plain error doctrine. He further argues that his counsel was ineffective in failing to produce mitigation evidence. We find these arguments unpersuasive.
 {¶ 24} Dooley's defense theory was that the alleged kidnapping and gross sexual imposition never occurred. He testified that the bedroom incident never occurred. Further, his wife, the victim's grandmother, also testified that she never saw Dooley in the victim's bed nor responded to any call for help from her grandchildren. Thus, there is no support in the record for Dooley's claim that the trial court should have found him guilty of the lesser degree of kidnapping when Dooley presented a complete defense to the charged crime, denying that the incident ever occurred. See State v. Leibold (Mar. 11, 1993), Cuyahoga App. No. 62071 ("Where a defendant interposes a complete defense to the charged crime, a lesser offense consideration is inappropriate.").
 {¶ 25} Moreover, we find no evidence in the record warranting a reduction of the offense from first degree to second degree kidnapping. The record reveals that Dooley committed gross sexual imposition before he "released" the victim. Under such circumstances, we cannot say that the victim was left in an unharmed condition. Cf. State v. Avery (1998),126 Ohio App.3d 36 (releasing a victim after a rape does not leave the victim in an "unharmed condition").
 {¶ 26} Accordingly, we find no error, plain or otherwise, in the trial court's finding Dooley guilty of first degree kidnapping. Further, we cannot say that his trial counsel was ineffective in failing to offer mitigation evidence when Dooley raised a complete defense to the charge. Otherwise, such mitigation evidence would have undermined the defense.
 {¶ 27} Next, Dooley claims that there was insufficient evidence to convict him of gross sexual imposition, as defined under R.C.2907.05(A)(1), which provides:
"No person shall have sexual contact with another, not the spouse ofthe offender * * * when * * * the offender purposely compels the otherperson * * * to submit by force or threat of force."
 {¶ 28} Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C.2901.01(A)(1). "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." State v. Schaim, 65 Ohio St.3d 51, 55, 1992-Ohio-31. Force can be inferred from the circumstances surrounding the sexual contact and is established if it is shown that the victim's will was overcome by fear or duress. State v. Rodriguez,
Cuyahoga App. No. 82265, 2003-Ohio-7056. Further, in situations involving a parent-child relationship with minor children, "force need not be overt and physically brutal, but can be subtle and psychological." State v.Eskridge (1988), 38 Ohio St.3d 56, 59.
 {¶ 29} In the instant case, Dooley was convicted of seven counts of gross sexual imposition. He claims that the State failed to prove the requisite element of force for each count and that the evidence supports only a conviction for sexual imposition. We disagree.
 {¶ 30} Our review of the record reveals that the State produced sufficient evidence of force through the victims' testimony. In describing each incident, D.H.'s testimony revealed that the sexual touching occurred despite his efforts to "get away" or break free from Dooley's grasp. From this testimony, we find that a rational trier of fact could reasonably infer that Dooley was physically restraining D.H. while touching him. Moreover, Dooley's pulling and grabbing D.H. and M.H. while trying to touch them sexually also demonstrates the requisite element of force.
 {¶ 31} Furthermore, considering Dooley's relationship as the victims' step-grandfather, the ages of the victims, and the victims' dependence on him for a place to live, we find that a reasonable trier of fact could infer that the victims' will was overcome by fear. M.H. testified that she was afraid to report the incidents because she had no other place to live. Similarly, D.H.'s testimony revealed that he felt helpless in the situation, given the response of Dooley's son when he confided in him about the first incident.
 {¶ 32} Finally, contrary to Dooley's assertion, we find that M.H.'s "belly button" constitutes an erogenous zone. The circumstances surrounding Dooley's touching M.H.'s "belly button" clearly indicated that he did so for the purpose of "sexually arousing or gratifying" himself. He touched M.H.'s "belly button" when he attempted to kiss it and wanted to "play" with it. Additionally, Dooley's apparent attraction to M.H. further demonstrated that his "touching" was not innocent.
 {¶ 33} Accordingly, construing the evidence in a light most favorable to the prosecution, we find that there was sufficient evidence for a rational trier of fact to find the necessary elements for seven counts of gross sexual imposition.
 {¶ 34} The second assignment of error is overruled.
 Sexual Predator Determination {¶ 35} In his third assignment of error, Dooley argues there was insufficient evidence to prove by clear and convincing evidence that he was likely to engage in one or more sexually oriented offenses in the future. He claims that the trial court's reliance on the Static-99 psychological test and his denial of guilt as recidivism factors was erroneous.
 {¶ 36} A sexual predator is defined in R.C. 2950.01(E) as a person who has been convicted of or pled guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. Thus, before classifying an offender as a sexual predator, the court must find by clear and convincing evidence that an offender is likely to commit a sexually oriented offense in the future. R.C. 2950.09(B)(4).
 {¶ 37} In State v. Eppinger, the Ohio Supreme Court defined the clear and convincing evidence standard as follows:
"Clear and convincing evidence is that measure or degree of proof whichwill produce in the mind of the trier of facts a firm belief orconviction as to the allegations sought to be established. It isintermediate, being more than a mere preponderance, but not to the extentof such certainty as is required beyond a reasonable doubt as in criminalcases. It does not mean clear and unequivocal."
 {¶ 38} State v. Eppinger, 91 Ohio St.3d 158, 164, 2001-Ohio-247, citing Cross v. Ledford (1954), 161 Ohio St. 469, 477.
 {¶ 39} In reviewing a trial court's decision based upon clear and convincing evidence, an appellate court must examine the record to determine whether sufficient evidence exists to satisfy the requisite degree of proof. State v. Schiebel (1990), 55 Ohio St.3d 71, 74.
 {¶ 40} Pursuant to R.C. 2950.09(B)(3), in making a determination as to whether an offender is a sexual predator, the trial court must consider all relevant factors, including but not limited to the following: the offender's age and prior criminal record, the age of the victim, whether the sexually oriented offense involved multiple victims, whether the offender used drugs or alcohol to impair the victim, whether the offender completed any sentence imposed for any conviction, whether the offender participated in available programs for sexual offenders, any mental disease or disability of the offender, whether the offender engaged in a pattern of abuse or displayed cruelty toward the victim, and any additional behavioral characteristics that contribute to the offender's conduct. R.C. 2950.09(B)(3)(a) through (j).
 {¶ 41} R.C. 2950.09(B)(2) does not require that each factor be met. It simply requires the trial court consider those factors that are relevant. State v. Cook, 83 Ohio St.3d 404, 426, 1998-Ohio-291; State v.Grimes (2001), 143 Ohio App.3d 86, 89.
 {¶ 42} Further, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge." State v. Schiebel (1990), 55 Ohio St.3d 71, 74, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 43} We find the evidence offered at the sexual predator hearing meets the criteria necessary for a sexual predator classification and that the trial court properly applied the factors enumerated in R.C.2950.09(B)(3). In classifying Dooley as a sexual predator, the trial court relied on the undisputed evidence that he had a prior criminal record, which included a sexually oriented offense, that there were multiple victims, and that the victims were ages 15 and 16. See R.C.2950.09(B)(3)(b)-(d). Moreover, the fact that Dooley engaged in an ongoing pattern of sexual abuse with his step-grandchildren while they lived at his home meets the criterion in R.C. 2950.09(B)(3)(h).
 {¶ 44} The trial court found Dooley's denial of any involvement in both the underlying offenses and his earlier conviction was indicative of his likelihood to reoffend. We agree. Dooley's persistent denial of the sexually oriented offenses prohibits his benefitting from a rehabilitative program. Such a consideration falls within the ambit of R.C. 2950.09(B)(3)(j).
 {¶ 45} We also find no merit to Dooley's contention that the trial court's reliance on the Static-99 test was misplaced. The Static-99 test is an actuarial instrument designed to estimate the probability of sexual recidivism among adult males convicted of at least one sexual offense. Dooley's score on the Static-99 test indicated that he had a medium-to-high risk of reoffending. This score, in conjunction with the above-described evidence, supports Dooley's classification as a sexual predator.
 {¶ 46} The third assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 47} In his final assignment of error, Dooley claims that his trial counsel was ineffective in failing to advocate on his behalf at sentencing.
 {¶ 48} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington (1984),466 U.S. 668. Pursuant to Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. State v. Bradley (1989), 42 Ohio St.3d 136, at paragraph one of the syllabus. To show such prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability existed that the result of the proceedings would have been different. Id. at paragraph two of the syllabus. Judicial scrutiny of a lawyer's performance must be highly deferential. State v. Sallie (1998), 81 Ohio St.3d 673, 674.
 {¶ 49} Dooley contends that his trial counsel should have urged the court to impose a lesser sentence on the kidnapping and intimidation convictions and that he should have urged the court to impose community controlled sanctions on the gross sexual imposition counts. However, our review of the record reveals that the trial court complied with the statutory requirements in imposing Dooley's sentence on each conviction. Dooley fails to present any evidence that the trial court would have imposed a different sentence had his counsel requested it. Accordingly, we find that Dooley was not prejudiced by his counsel's performance.
 {¶ 50} The fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J. and Gallagher, J. concur.