JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Rudolph Weimer appeals from his convictions on two counts of rape and one count of gross sexual imposition. His four assignments of error assert that (1) the court's judgment of conviction is contrary to evidence showing that he did not use force to commit the offenses, (2) the court erroneously permitted the state to introduce hearsay testimony, (3) he is entitled to be resentenced pursuant toState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, and (4) *Page 2 
the court erred by sentencing him to more than the minimum sentence. We reject these assertions, finding that the state presented sufficient evidence of force, that the court did not accept any out-of-court statements for the truth of the matter asserted, and that the court did not engage in judicial factfinding when sentencing appellant to prison terms that fell within applicable statutory ranges. We therefore affirm the judgment of conviction.
 {¶ 2} The state alleged that appellant entered a bedroom where the 13-year-old victim slept and exposed himself, fondled the victim's breast, and then digitally penetrated her.
 {¶ 3} The victim testified that she had been visiting with her cousin, and that appellant was her cousin's father. A number of people gathered to watch a movie, but the victim excused herself and went into her cousin's bedroom to make some telephone calls. She fell asleep for about ten minutes and was awakened by appellant. He told her how beautiful she was and that he wanted to have sex with her. She told him she did not want to have sex. He then lifted her shirt and, while holding one of her hands down, began kissing her breast. Appellant then put his hand down her pants and penetrated her vagina. When appellant asked her if it felt good, she replied negatively. He then told her that he wanted to be her "virginity taker" and that they could move to another area for privacy. She again told him "no." *Page 3 
 {¶ 4} They left the bedroom and went into the kitchen. Appellant told the victim that she could be "his little girlfriend" and that he would give her some money occasionally so that she could buy things like tennis shoes. The victim went back into the bedroom. Appellant followed her and told her to pull her pants down. She refused. He pulled her pants down, told her to be quiet and performed oral sex on her. The victim testified that his tongue penetrated her vagina. The victim tried to pull her legs away, but appellant had her hand and would not move. Only after appellant's two-year-old daughter came into the bedroom did he stop. He took the daughter and led her away. He returned to the bedroom, but the daughter reentered the bedroom and he had to lead her away again. This time, he did not return.
 I {¶ 5} Appellant first argues that his convictions for rape and gross sexual imposition were based on insufficient evidence because the state failed to offer proof that he used force in the commission of the offenses. He maintains that the evidence shows he stopped doing certain things when the victim asked him to stop, so it could not be said that he forced himself upon her.
 A {¶ 6} A claim that a conviction is unsupported by sufficient evidence is a question of law in which we determine whether the state met its burden to produce evidence on each element of the crime charged. We examine the evidence in a light *Page 4 
most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia (1979),443 U.S. 307, 319; State v. Thompkins (1997), 78 Ohio St.3d 380, 1997-Ohio-52.
 B {¶ 7} The indictment charged appellant with committing rape under R.C.2907.02(A)(2). That section states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 8} R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 9} The term "force" is defined in R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."
 {¶ 10} The state offered evidence of direct force that obviates any discussion of coercion. The victim testified that appellant held her hand while he engaged in oral *Page 5 
sex, and that she was not able to get off the bed and leave, despite wishing to do so. From that testimony alone, a rational trier of fact could have found that the state established the element of force.
 {¶ 11} We reject appellant's argument that the victim testified in terms that suggested she did not view the incident as a "forceful encounter." The testimony did not show the victim acknowledging that no force had been used, but rather that appellant did not use a weapon during the commission of the offense:
 "Q. There was no force — if we go along with your story — is that correct?
 "A. Huh?
 "MR. THOMAS: Objection.
 "Q. There was no force. He didn't have a gun on you?
 "A. No.
 "Q. He didn't have a knife on you?
 "A. No."
 {¶ 12} The absence of a weapon had little to do with the actual physical restraint he employed on the victim during the commission of these offenses. Force can be established irrespective of whether the offender used a weapon during the commission of the offense.
 {¶ 13} Likewise, we reject appellant's argument that he did not force the victim's capitulation because he stopped when the victim told him to stop. By the *Page 6 
time he stopped at the victim's request, he had already used force to accomplish the act. His decision to stop when asked came after he committed the offense. It had no relevance to the question of force in the initial commission of the offense.
 {¶ 14} Apart from evidence of direct force, the state offered evidence to show that the victim's relationship with appellant was of such a nature that any capitulation by her could be seen as having been coerced.
 {¶ 15} In State v. Griffith, Franklin App. No. 05AP-1042,2006-Ohio-6983, the Franklin County Court of Appeals stated:
 {¶ 16} "To prove the force element of a sexual offense, the state must establish force beyond that force inherent in the crime itself.State v. Dye (1998), 82 Ohio St.3d 323, 1998 Ohio 234, 695 N.E.2d 763. The force necessary to commit a sexual offense where force is an element depends on the circumstances, including the age, size, and strength of the parties and their relation to each other. State v. Eskridge (1988),38 Ohio St.3d 56, 526 N.E.2d 304. Courts have long recognized the coercion inherent in cases involving parents or other figures of authority sexually abusing children in their care. In those cases, courts have held that `force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the * * * victim's will was overcome by fear or duress, the forcible element * * * can be established.' Id. at 58-59. In such situations, even a minimal amount of *Page 7 
physical exertion will satisfy the force element. See State v.Lillard, Cuyahoga App. No. 69242."
 {¶ 17} Appellant acknowledges this case law, but suggests we view the issue of force in light of State v. Schaim, 65 Ohio St.3d 51,1992-Ohio-31. In Schaim, the Ohio Supreme Court considered the question of force in the context of a father who engaged in sexual activity with his daughter when she was twenty-years-old. Schaim's daughter acknowledged that no force had been involved, and sex had been used as a form of punishment when she misbehaved or in return for favors. The supreme court refused to apply Eskridge to the case, stating that "a woman over the age of majority is not compelled to submit to her father in the same manner as a four-year-old girl. She is no longer completely dependent on her parents, and is more nearly their equal in size, strength, and mental resources." Schaim, 65 Ohio St.3d at 665.
 {¶ 18} While we could easily make a distinction between the maturity levels of this thirteen-year-old victim and the twenty-year-old victim in Schaim, we need not do so. The victim testified that she frequently visited with her cousin at appellant's house and considered it a second home. The victim's mother corroborated that testimony, saying that the victim stayed at the house every weekend, and sometimes slept there on school nights. The victim also testified that when staying at the house, she talked to her cousin's mother "a lot and played a lot with her dad." There was an *Page 8 
obvious familial relationship between appellant and the victim — the victim said that she wondered why appellant forced himself on her when she was "like a child of his." As in Eskridge, the victim exhibited a filial obligation of obedience to appellant that was sufficient to establish that she had been coerced into submission. This constituted sufficient evidence of force.
 C {¶ 19} The preceding discussion applies with equal force to show that the state offered sufficient evidence to prove the element of force in the commission of the gross sexual imposition.
 {¶ 20} R.C. 2907.05(A)(1) states that no person shall have sexual contact with another when the offender purposely compels the other person to submit by force or threat of force. "Sexual contact" is defined in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 21} The victim testified that appellant entered the bedroom and asked her if he could lift her shirt up. The victim said "no," but he proceeded despite her refusal. As he lifted her shirt, he held her hand with one of his hands and began kissing her breasts. The victim said that she was unable to get off the bed despite wishing to do so. *Page 9 
 {¶ 22} As with the evidence relating to the rape, we find that a rational trier of fact could have found that the state established all the essential elements of gross sexual imposition beyond a reasonable doubt. By kissing the victim's breasts, appellant engaged in sexual contact. Appellant employed physical force by restraining the victim's hand, and coercion based on his familial relationship with the victim.
 II {¶ 23} In his second assignment of error, appellant argues that the court improperly admitted into evidence hearsay regarding the victim's reporting of the incident. He maintains that the court erroneously permitted the victim's mother to testify to the circumstances of how she learned about the rape, including statements the victim made to her mother concerning details of the rape.
 {¶ 24} Evid.R. 801(C) defines "hearsay" as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay evidence is inadmissible unless it falls within the specific hearsay exceptions enumerated in the Rules of Evidence. State v. DeMarco (1987),31 Ohio St.3d 191, 195.
 {¶ 25} The victim's mother first began suspecting that something happened to the victim when the victim began showing a reluctance to go to her cousin's house. *Page 10 
The mother questioned the victim and, as she was about to tell the court what she learned, appellant objected. The court stated:
 {¶ 26} "I think that this now cannot be accepted for the truth of its contents, so it's not — the Court can't accept it for — as evidence of the truth of its contents. The Court can accept it as notice, this is the child putting someone on notice that they claim something has occurred, okay. So, you can proceed on that basis. Restate the question and then we will get an answer to it on that basis."
 {¶ 27} When the mother testified that the victim told that appellant had touched her, the court stated, "that's not being accepted for the truth that Uncle Rudy did touch her but just — just that she put the adults on notice." When the mother testified to specific details of the offense as related to her by the victim, the court again told appellant that "the witness' statements are not being accepted for the truth that these things occurred."
 {¶ 28} In a case tried to the court, we engage in the presumption that the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary. State v. White (1968), 15 Ohio St.2d 146, 151. We need not resort to this presumption, however, because the court's remarks leave no doubt that it did not accept the out-of-court statements for the truth of the matter asserted, but merely to explain how the mother discovered that the victim had been raped. The victim herself testified to the same effect, so any *Page 11 
error would have been harmless as she was subjected to full cross-examination on every matter raised as error in the mother's testimony.
 III {¶ 29} Appellant's third and fourth assignments of error raises issues relating to sentencing. He argues that the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, applies to him and that the court erred by sentencing him to more than the minimum term of incarceration.
 {¶ 30} In Foster, the supreme court found the felony sentencing provisions of the Revised Code relating to non-minimum [R.C.2929.14(B)], maximum [R.C. 2929.14(C)], and consecutive sentences [R.C.2929.14(E)(4)] were unconstitutional because they required judicial findings of fact not proven to a jury. Id. at paragraphs one and three of the syllabus. To remedy this infirmity, the supreme court severed all offending provisions which would have required the court to engage in factfinding when imposing more than the minimum sentence. From that point forward, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. The supreme court held that its decision applied to "all cases on direct review." Id. at ¶ 106. *Page 12 
 {¶ 31} The supreme court released Foster on February 27, 2006. The court journalized its sentencing entry on May 5, 2006; hence, it sentenced appellant after Foster had been released. The sentencing transcript shows that the court did not engage in any prohibited judicial factfinding. Instead, following the supreme court's directive in Foster, the court considered both R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. It sentenced appellant within the applicable statutory ranges: four years on the two first degree felony rape counts and seventeen months on the fourth degree felony gross sexual imposition. At all events, the court's sentencing fully complied with the applicable law. No abuse of discretion has been shown.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 13 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN C. GALLAGHER, P.J., and MARY EILEEN KILBANE, J., CONCUR *Page 1