[Cite as *State v. Emerine*, 2017-Ohio-1206.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-T-0048** |
| JONATHAN R. EMERINE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2015 CR 00693.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *Deena L. DeVico*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Robert J. Rohrbaugh, II,* Robert J. Rohrbaugh, II, L.L.C., 3200 Belmont Avenue, Suite 6, Youngstown, OH 44505 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Jonathan R. Emerine, appeals from the May 2, 2016 judgment of the Trumbull County Court of Common Pleas finding him guilty of rape and three counts of gross sexual imposition following a jury trial and sentencing him to 31 and one half years to life in prison. Appellant was also labeled a Tier III sex offender. On appeal, appellant asserts the trial court erred in not providing lesser included offense

instructions and alleges his conviction is against the manifest weight of the evidence. Finding no error, we affirm.

{¶2} On September 4, 2015, the Trumbull County Grand Jury indicted appellant on one count of rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b) and (B), with a factual finding pursuant to R.C. 2971.03(B)(1)(c) that he purposely compelled the victim to submit by force or threat of force; and three counts of gross sexual imposition, two felonies of the third degree and one felony of the fourth degree, in violation of R.C. 2907.05(A)(1)(4), (B), and (C)(1)(2). Appellant was represented by counsel, entered a not guilty plea at his arraignment, and waived his right to a speedy trial.

{¶3} A jury trial commenced on March 28, 2016.

{¶4} Appellee, the state of Ohio, presented nine witnesses to testify on its behalf: K.M., the 13-year-old victim; Amanda Coleman, K.M.'s mother; S.M., the 11-year-old victim; Bridget Coleman, S.M.'s mother; Sergeant Jennifer Carr, with the Howland Township Police Department ("HTPD"); Detective Tony Villanueva, with the HTPD; Janet Gorsuch, a nurse practitioner at Akron Children's Hospital; John Melville, M.D., a child abuse pediatrician and Site Director of the Child Advocacy Center at Akron Children's Hospital; and Mary Wocjiak, an investigator with Trumbull County Children Services.

{¶5} This case involves two young female victims, 11-year-old S.M. and 13-year-old K.M. Regarding S.M., on April 2, 2015, she spent the night with her aunt, Cassie Emerine ("Cassie"). Cassie lived at her Howland Township home with appellant (Cassie's husband and S.M.'s uncle) and her infant son. Cassie and S.M. had a very

2

close relationship. They had lived together for several years and had regular sleepovers in subsequent years. On the night at issue, around midnight, S.M. was awake on the couch. She was wearing a bra, panties, and a long t-shirt. Appellant entered the room and asked S.M. if she wanted to watch a T.V. show on his cell phone. The others in the home were asleep.

{¶6} Appellant and S.M. laid on the couch together. Appellant then asked S.M. to go with him to the basement to help him do laundry. In the basement, appellant began tickling S.M. on her breasts over her t-shirt. S.M. indicated appellant sort of pushed her/sat her down on a pile of laundry, straddled over her, and continued tickling her. S.M. was "uncomfortable." She tried to get up from underneath him but she was not successful. She asked appellant to stop several times and he finally did.

{¶7} Appellant and S.M. went back upstairs. They laid on the couch together to finish watching the show on appellant's cell phone. Appellant began touching S.M., skin to skin, on her breast with one hand and her vaginal area with the other. S.M. testified that appellant initially rubbed her vaginal area with his hand before getting rougher. Appellant ended up grabbing S.M.'s breast and pushing his finger into her vagina. She told him to stop because it hurt. However, appellant continued rubbing her breast and vaginal area for a while. He told S.M. that when Cassie leaves for work in the morning, they could go into the bedroom together.

{¶8} S.M. was scared. She immediately messaged her mother, Bridget Coleman, to come pick her up. While getting dressed and waiting for her mom, S.M. said that appellant continued to bother her. He pushed her knees up to her shoulders and pinned her down on her back. He asked her why she was getting dressed and why

3

she was leaving. When Bridget arrived, S.M. left. At that time, S.M. was afraid to tell her mother what appellant had done to her for fear that it would break up the family. S.M. did not tell anyone until three months later when asked by her mother if appellant had touched her, after learning that appellant had touched S.M.'s cousin, K.M.

{¶9} A criminal investigation began on July 3, 2015. At the HTPD, S.M. told the same version of events of what had taken place to Sergeant Carr. Detective Villanueva and Sergeant Carr spoke about the incident. S.M. was also interviewed about a week later by Investigator Wocjiak as part of a medical and emotional examination. S.M. also gave the same account of what had happened to Wocjiak. S.M. provided very good detail and created a timeline that described how the incident progressed through the night.

{¶10} Nurse Practioner Gorsuch conducted a physical examination of S.M. The tests for pregnancy and sexually transmitted disease were negative. The exam of S.M.'s vaginal area and hymen were normal. Gorsuch testified that little girls' hymens are tender to the touch and are covered by the labia majora to protect them from any contact by outside objects including underwear or clothing. Gorsuch indicated that nothing would touch the hymen and cause pain unless it is purposefully touched. Gorsuch recommended S.M. receive trauma-focused cognitive behavioral counseling.

{¶11} Dr. Melville testified that a normal medical examination is present in at least half of all child sexual assault cases even those resulting in pregnancy. Dr. Melville stated the vagina heals very quickly without a scar or other sign of injury. In this case, over three months had passed between the incident and the medical exam. Dr.

4

Melville further indicated that a girl of S.M.'s age would not have pain upon touching her vaginal area unless her hymen had been touched and penetration had occurred.

{¶12} Regarding K.M., on June 26, 2015, she was babysitting her one-year-old cousin at Cassie's and appellant's home in Howland Township. Like S.M., Cassie is K.M.'s aunt and appellant is K.M.'s uncle. K.M. watched the baby from 8:00 a.m. when Cassie left for work until appellant came home sometime in the afternoon. Appellant sat by K.M. on the couch and asked her what kind of bra she was wearing. K.M. responded that she had on a sports bra. Appellant reached over, pushed his hand through the side of her tank top and bra, and began touching K.M.'s breast, skin to skin. Appellant pulled his hand out, reached back in, and began grabbing K.M.'s breast, skin to skin.

{¶13} K.M. managed to pull away. She scooted over to the other side of the couch. Appellant followed and scooted over next to her. K.M. slid down off the couch to sit on the floor instead. Appellant followed, slid off the couch, and sat next to her on the floor. K.M. covered herself up with her arms. She was scared that appellant might try to touch her again. Appellant grabbed K.M.'s arms with one hand and held them to her chest. This forced K.M. to slide down. She was lying on her back with her arms pinned down to her chest. Appellant was on his knees behind K.M. pinning her to the floor with one hand.

{¶14} According to K.M., appellant then used his other hand to pull up the front of the waistband of her leggings. He looked down her pants at her pubic area. K.M. managed to get one hand free and tried covering up her pubic area. Appellant asked her if she shaved down there. K.M. asked appellant to stop at least once or twice. However, appellant continued to try pulling her hand away from her pubic area while still

5

pinning her to the floor.  Appellant leaned down close to K.M.  She bit his arm, grabbed her phone, and locked herself in the bathroom.

{¶15}  K.M. immediately texted her mother, Amanda Coleman, to come pick her up.  K.M. then texted her mother again regarding what had happened.  During trial, K.M.'s text messages to her mother were entered into evidence, detailing the incident.  Amanda waited several days before reporting the incident to the police.  Amanda ended up taking K.M. to the HTPD on July 2, 2015.  K.M. provided the same account of how appellant sexually assaulted her to Sergeant Carr.

{¶16}  Following the state's case, appellant did not testify.  Defense counsel, on cross-examination, called RoyAnne Rudolph, an investigator with the Trumbull County Prosecutor's Office.  Rudolph first met with S.M. on August 20, 2015.  Rudolph testified she showed S.M. a "display," i.e., the nomenclature of a female's anatomy for the purposes of identification.  Regarding the "hole" in reference to where appellant had inserted his finger, S.M. pointed to the picture of a vagina.  Rudolph said there is a written communication of S.M.'s interview.

{¶17}  Following trial, the jury returned its verdict, finding appellant guilty of rape and three counts of gross sexual imposition.  On May 2, 2016, the court sentenced appellant to an aggregate term of 31 and one half years to life in prison.  The court labeled appellant a Tier III sex offender.  The court also notified him that post-release control is mandatory for five years.  Appellant filed a timely appeal and asserts the following assignments of error:

{¶18}  "[1.] The trial court erred in refusing to instruct the jury on the lesser included offense.

6

**{¶19}** "[2.] Appellant's conviction was against the manifest weight of the evidence."

**{¶20}** In his first assignment of error, appellant argues the trial court erred in refusing to instruct the jury of the lesser included offenses.

**{¶21}** "'Generally, "a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged(.)' *State v. Adams* (1980), 62 Ohio St.2d 151, 153 (* * *). See, also, *State v. Comen* (1990), 50 Ohio St.3d 206, * * *, (* * *), paragraph two of the syllabus (holding that "after arguments are complete, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder."); *State v. Simon* ((May 26, 2000), 11th Dist. No. 98-L-134, 2000 Ohio App. LEXIS 2272, at 15), (*), 2000 WL 688728 (* *). Stated differently, a "criminal defendant is entitled to have a trial court give complete and accurate jury instructions on all issues raised by the evidence." *State v. Sneed* (1992), 63 Ohio St.3d 3, 9 (* * *).

**{¶22}** "'The decision to issue a particular jury instruction rests within the sound discretion of the trial court. *State v. Jones* (Mar. 17, 1995), (11th Dist.) No. 94-L-060, (* * *) 1995 Ohio App. LEXIS 971, (at) 3, 1995 WL 243448. Accordingly, this court will not reverse a decision concerning the giving [or not giving] of jury instructions absent an abuse of discretion. *Jones* at 3. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or capricious. *State v. Montgomery* (1990), 61 Ohio St.3d 410, 413 (* * *)." (Parallel citations omitted.) *State v. Cobb*, 11th Dist. Portage No. 2007-P-0004, 2007-Ohio-5614,

¶23-24, quoting *State v. Huckabee* (Mar. 9, 2001), 11th Dist. Geauga No. 99-G-2252, 2001 Ohio App. LEXIS 1122, at 16-19, 2001 WL 253048.

**{¶23}** "As a general matter, R.C. 2945.74 states that a criminal defendant may be found guilty of a lesser included offense even if that offense was not set forth in the charging instrument. *See State v. Evans,* 122 Ohio St.3d 381, 2009–Ohio–2974, ¶8. However, [a] jury instruction on a lesser included offense is only required if the evidence would reasonably support a conviction on the lesser included offense, as well as an acquittal on the indicted offense. *State v. Thomas,* 40 Ohio St.3d 213 (1988), paragraph two of the syllabus." *State v. Freeman*, 11th Dist. Trumbull No. 2011-T-0059, 2012-Ohio-2244, ¶17.

**{¶24}** In the case at bar, appellant asked the trial judge to add a lesser-included instruction of attempted rape and/or sexual battery for the count two rape charge involving S.M. Appellant also asked the trial judge to add a lesser-included instruction of sexual imposition for the count four gross sexual imposition charge involving K.M. Appellant claims it is unclear whether S.M. was penetrated by appellant and asserts there was a lack of evidence of force or threat of force. Based on the evidence presented, the trial judge properly denied appellant's requests for lesser-included instructions.

**{¶25}** Regarding S.M., R.C. 2907.02, "Rape," provides in part:

**{¶26}** "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

**{¶27}** "* * *

8

**{¶28}** "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

**{¶29}** R.C. 2907.01 states:

**{¶30}** "(A) 'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

**{¶31}** S.M. was 11 years old at the time of the offense. As stated, S.M. testified that appellant, her uncle, pushed his hands down her pants, rubbed her vaginal area, and penetrated her by inserting his finger into her vagina, i.e., rape. *See* R.C. 2907.02(A)(1)(b); R.C. 2907.01(A). S.M. said it got "rougher." She told him to stop because it hurt. Expert testimony at trial further showed that the pain could only be caused by penetration of S.M.'s vagina and contact with her hymen.

**{¶32}** The trial judge correctly denied appellant's request for a lesser-included instruction for attempted rape as there is no evidence in the record that appellant *attempted* but failed to rape S.M. Rather, as stated, the evidence reveals appellant did in fact rape S.M. Therefore, the facts in this case also do not support a sexual battery instruction as all of the elements of the indicted rape offense were proven. *See Freeman*, *supra,* at ¶17 ("[a] jury instruction on a lesser included offense is only required if the evidence would reasonably support a conviction on the lesser included offense, as well as an acquittal on the indicted offense. *State v. Thomas,* 40 Ohio St.3d 213 (1988), paragraph two of the syllabus.")

**{¶33}** Thus, the trial judge properly denied a lesser-included instruction of attempted rape and/or sexual battery for the count two rape charge involving S.M.

**{¶34}** Regarding K.M., R.C. 2907.05, "Gross sexual imposition," states:

**{¶35}** "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

**{¶36}** "(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."

**{¶37}** "Threat" is defined as follows: "A communicated intent to inflict harm or loss on another or on another's property, esp. one that might diminish a person's freedom to act voluntarily or with lawful consent; a declaration, express or implied, of an intent to inflict loss or pain on another[.]" Black's Law Dictionary (10th Ed.2014).

**{¶38}** "Force" is defined as follows: "Power, violence, or pressure directed against a person or thing * * * consisting in a physical act * * * [t]hreats and intimidation to gain control or prevent resistance[.]" Black's Law Dictionary (10th Ed.2014). The Ohio Revised Code also defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

**{¶39}** "Force can be inferred from the circumstances surrounding the sexual contact and is established if it is shown that the victim's will was overcome by fear or duress." *State v. Dooley*, 8th Dist. Cuyahoga No. 84206, 2005-Ohio-628, ¶28.

10

{¶40} "'The force necessary to commit a sexual offense where force is an element depends on the circumstances, including the age, size, and strength of the parties and their relation to each other. *State v. Eskridge* (1988), 38 Ohio St.3d 56 * * *. Courts have long recognized the coercion inherent in cases involving parents or other figures of authority sexually abusing children in their care. In those cases, courts have held that "force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the (* * *) victim's will was overcome by fear or duress, the forcible element (* * *) can be established." *Id.* at 58-59. In such situations, even a minimal amount of physical exertion will satisfy the force element. See *State v. Lillard,* Cuyahoga App. No. 69242.'" (Parallel citation omitted.) *State v. Weimer*, 8th Dist. Cuyahoga No. 88135, 2007-Ohio-3774, ¶16.

{¶41} Appellant used force here in several ways. The means used to commit the offense, the age of the victim, and the status of the offender, are all relevant in this case. Appellant, K.M.'s uncle, had a familial or in loco parentis relationship with his niece. K.M. was 13 years old at the time of the offense. As stated, K.M. testified she was babysitting her one-year-old cousin. Appellant came home, sat by K.M. on the couch, and asked her what kind of bra she was wearing. Appellant reached over, pushed his hand through the side of her tank top and bra, and began touching K.M.'s breast, skin to skin. Appellant pulled his hand out, reached back in, and began grabbing K.M.'s breast, skin to skin.

{¶42} K.M. managed to pull away and scooted over to the other side of the couch. Appellant followed. K.M. slid down off the couch to sit on the floor instead. Appellant followed. K.M. covered herself up with her arms. She was scared that

11

appellant might try to touch her again.  Appellant grabbed K.M.'s arms with one hand and held them to her chest.  This forced K.M. to slide down.  She was lying on her back with her arms pinned down to her chest.  Appellant was on his knees behind K.M. pinning her to the floor with one hand.

{¶43}  According to K.M., appellant then used his other hand to pull up the front of the waistband of her leggings.  He looked down her pants at her pubic area.  K.M. managed to get one hand free and tried covering up her pubic area.  Appellant asked her if she shaved down there.  K.M. asked appellant to stop at least once or twice. However, appellant continued to try pulling her hand away from her pubic area while still pinning her to the floor.  Appellant leaned down close to K.M.  She bit his arm, grabbed her phone, locked herself in the bathroom, and texted her mother.  K.M. later provided the same account of the incident to Sergeant Carr.

{¶44}  Contrary to appellant's assertion, the record clearly shows the element of force necessary for gross sexual imposition.  *See* R.C. 2907.05(A)(1).  In light of the evidence presented at trial, appellant, K.M.'s uncle and the only adult home, forced her to submit to the sexual contact.  Again, the means used to commit the offense, the age of the victim, and the status of the offender, are all relevant here.  Therefore, the facts in this case do not support a sexual imposition instruction as all of the elements of the gross sexual imposition indicted offense were proven.  *See Freeman*, *supra,* at ¶17 ("[a] jury instruction on a lesser included offense is only required if the evidence would reasonably support a conviction on the lesser included offense, as well as an acquittal on the indicted offense.  *State v. Thomas,* 40 Ohio St.3d 213 (1988), paragraph two of the syllabus.")

**{¶45}** Thus, the trial judge properly denied a lesser-included instruction of sexual imposition for the count four gross sexual imposition charge involving K.M.

**{¶46}** Appellant's first assignment of error is without merit.

**{¶47}** In his second assignment of error, appellant maintains his conviction is against the manifest weight of the evidence.

**{¶48}** As this court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *4-5 (Dec. 23, 1994):

**{¶49}** "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented.

**{¶50}** "* * *

**{¶51}** "* * * '[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

**{¶52}** "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *" (Emphasis sic.) (Citations omitted.)

**{¶53}** Regarding manifest weight, a judgment of a trial court should be reversed "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The trier of fact is in

the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967).

**{¶54}** "[C]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Fasline*, 11th Dist. Trumbull No. 2014-T-0004, 2015-Ohio-715, ¶39, citing *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), citing State v. Jenks, 61 Ohio St.3d 259, paragraph one of the syllabus.

**{¶55}** In this case, the jury chose to believe the state's witnesses. *DeHass, supra*, at paragraph one of the syllabus. Based on the facts and evidence presented, as previously stated and addressed, we cannot say that the jury clearly lost its way in finding appellant guilty of rape, regarding S.M., as the testimony reveals penetration, and guilty of gross sexual imposition, regarding K.M., as the testimony reveals force. *Schlee, supra*, at *4-5; *Thompkins, supra*, at 387.

**{¶56}** Appellant's second assignment of error is without merit.

**{¶57}** For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Trumbull County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, P.J.,

THOMAS R. WRIGHT, J.,

concur.

14